JOHN M. NEWMAN
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E Front Street, Suite 401
Missoula, MT 59802
Phone: (406) 829-3336
Fax: (406) 542-1476
Email: john.newman@usdoj.gov

ABBIE J.N. CZIOK
Assistant U.S. Attorney
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5268
Fax: (406) 457-5130
Email: abbie.cziok@usdoj.gov

Attorneys for Defendant
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BLOSSOM OLD BULL, Personal Representative of the Estate of Braven Glenn,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>UNITED STATES OF AMERICA, and DOES 1-10,<br><br>　　　　　　Defendants. | CV 22-109-BLG-KLD<br><br><br>UNITED STATES' PRELIMINARY PRETRIAL STATEMENT |

Pursuant to the Court's Order of October 4, 2022 (Doc. 3) and L.R. 16.2(b)(1), Defendant United States provides the following preliminary pretrial statement.

1

A.     **A brief factual outline of the case**.

Plaintiff asserts that on November 24, 2020, her 17-year-old son, Braven Glenn, died during a vehicle pursuit initiated and carried out by Tribal Police on the Crow Indian Reservation. Glenn's vehicle allegedly left the roadway during the pursuit and crashed into a moving train. The Crow Tribal Police—which dissolved since the time of this incident—did not operate pursuant to a 638 contract with the United States, meaning Tribal Police officers are not deemed federal employees for purposes of liability under the Federal Tort Claims Act ("FTCA"). Plaintiff alleges that Bureau of Indian Affairs ("BIA") Officers were aware of the pursuit and allegedly knew of a lack of training and qualification of the Tribal Police, yet did not intervene to stop the pursuit. Plaintiff also alleges that BIA Officers failed to provide necessary and timely medical aid to Glenn. Nevertheless, it appears undisputed that BIA Officers were not involved in the pursuit. Moreover, BIA Officers did not arrive at the scene of the crash until 30 minutes after it occurred.

B.     **The basis for federal jurisdiction and for venue in the division.**

Plaintiff alleges this Court has subject matter jurisdiction with respect to the claims against the United States pursuant to 28 U.S.C. § 2671, *et seq*., and 28 U.S.C. § 1346(b), which generally provide federal district courts with jurisdiction over claims arising under the FTCA.

Plaintiff claims venue is appropriate pursuant to 28 U.S.C. §§ 1391(e) and 1402(b) and L.R. 3.2, as the alleged tort occurred in Big Horn County, Montana, in the Court's Billings Division.

**C.   The factual basis of each claim or defense advanced by the party.**

The factual bases of the United States' defenses are incorporated into the discussion of the legal theories underlying those defenses in Section D below.

**D.   The legal theory underlying each claim or defense, including, where necessary to a reasonable understanding of the claim or defense, citations to authority.**

   1.   **Lack of subject matter jurisdiction.**

The United States can only be liable under the FTCA for the acts or omissions of federal employees, 28 U.S.C. § 1346(b), and can only be liable for employee conduct not excepted from FTCA under 28 U.S.C. § 2680.   In this case, the pursuit in question involved only Crow Tribal Police officers, none of whom were actual or deemed federal employees, and the Court lacks subject matter jurisdiction over the United States consequently.   Moreover, to the extent federal employee conduct is at issue, liability may be precluded by the discretionary function and/or intentional torts exceptions to the FTCA, 28 U.S.C. § 2680(a), (h). In particular, personnel decisions related to hiring, retention, training, and supervision are not subject to statutory or regulatory prescriptions, and such decisions involve the weighing of competing policy considerations.   *See Doe v.*

3

*Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009); *Nurse v. U.S.*, 226 F.3d 996, 1001 (9th Cir. 2000); *Vickers v. U.S.*, 228 F.3d 944, 950 (9th Cir. 2000); *Gager v. U.S.*, 149 F.3d 918, 921 (9th Cir. 1998).

**2.    Failure to state a claim; due care and diligence.**

To prevail in a negligence claim under Montana law, the plaintiff must establish an actionable legal duty, breach of that duty, and a causal connection between the breach and the alleged injuries.  *See, e.g., Peterson v. Eichhorn*, 189 P.3d 615, ¶ 23 (Mont. 2008).   Here, the United States: (1) did not owe Plaintiff a legal duty in connection with the actions of Crow Tribal Police officer, (2) is not liable because its agents acted in accordance with the applicable standard of care in responding to the scene of the vehicle crash on November 24, 2020, and (3) there is no causal connection between the actions of any federal employee and Braven Glenn's death.

**3.    Comparative negligence.**

The United States' liability may be reduced or altogether negated if and to the extent Plaintiff's own negligence caused his alleged injuries.   Mont. Code Ann. § 27–1–702; *Payne v. Knutson*, 99 P.3d 200, ¶ 18 (Mont. 2004).    Here, Braven Glenn's conduct in driving well above the posted speed limit on the evening of November 24, 2020 resulted in the pursuit by Crow Tribal Police officers, during which Glenn lost control of his vehicle and crashed.    Glenn's own

negligence exceeds that of all defendants combined, if any.

### 4. Third-party liability.

Montana law provides that "any . . . person whose negligence may have contributed as a proximate cause to [an alleged] injury . . . may be joined as an additional party to the action." Mont. Code Ann. § 27–1–703(4). "For purposes of determining the percentage of liability attributable to each party whose action contributed to the injury complained of, the trier of fact shall consider the negligence of the claimant, injured person, defendants, and third-party defendants." *Id*. Furthermore, the United States can only be liable under the FTCA for the acts or omissions of its employees acting within the course and scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2671.

The vehicle pursuit at issue in this case was initiated and carried out by Crow Tribal Police officers, who may be partially or entirely responsible for Plaintiff's alleged injuries.

### 5. Statutory limitations under United States Code Title 28.

The FTCA expressly limits Plaintiff's potential damages, Plaintiff's counsel's fees, prejudgment interest (assuming, without conceding liability, entry of a judgment), and availability of a jury trial. 28 U.S.C. §§ 2402, 2674, 2675, 2678. Moreover, Plaintiff cannot recover attorney's fees pursuant to 28 U.S.C. § 2412(d)(1)(A).

E.   **A computation of damages.**

The United States is not claiming damages in this case.

F.   **The pendency or disposition of any related state or federal litigation.**

There are no known related state or federal cases.

G.   **Proposed additional stipulations of fact not included in the Statement of Stipulated Facts,** *see* **L.R. 16.2(b)(3), and the parties' understanding as to what law applies.**

The United States does not propose any additional stipulations of fact.

Under the FTCA, liability is determined by the law of state in which the alleged tortious conduct occurred.

H.   **Proposed deadlines relating to joinder of parties or amendment of the pleadings**.

The parties have agreed to a deadline of March 10, 2023 for joinder of parties and amendment of pleadings.

I.   **Identification of controlling issues of law suitable for pretrial disposition.**

Applicability of some or all of the above-outlined defenses and statutory/jurisdictional limitations.

J.   **The name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information. If known, the address and telephone number of the individual must be provided to all counsel on request.**

## BIA Employee Witnesses

1. <u>Lenora Nioce</u>
   Special Agent in Charge
   BIA OJS, District V

   SAC Nioce is the Special Agent in Charge of the Bureau of Indian Affairs Office of Justice Services, District V.   She has information concerning relevant BIA OJS policies and procedures involving BIA OJS law enforcement.   She further has information concerning the lack of a 638 Contract entered into between BIA OJS and the Crow Tribe for law enforcement services.   She has information concerning whether any BIA OJS employees were involved in the pursuit.

2. <u>Leslie Gourneau</u>
   Self Determination Officer
   BIA-Rocky Mountain Regional Office

   Ms. Gourneau is the self-determination officer for the BIA Rocky Mountain Region.   She has information concerning the administration of the Regional 638 Contracts for law enforcement services.   She has information concerning the lack of a 638 Contract between the BIA and the Crow Tribe for law enforcement services.

3. <u>Israel Bell</u>
   Special Agent
   BIA-Internal Affairs

   Mr. Bell is the Internal Affairs Special Agent who investigated the pursuit.   He has information concerning the procedures used in his investigation and the information he obtained during the course of the investigation relating to the pursuit of Braven Glenn and the lack of a 638 Contract between BIA and the Crow Nation.

4. <u>Athalia R. Rock Above-Morrison, Police Officer</u>
   BIA, OJS-Crow Agency

   Ms. Rock Above-Morrison was a BIA OJS Crow Agency law enforcement officer who arrived at the scene of the crash.   She has

information concerning what she observed and what, if any, actions she undertook.

5. <u>Brian Tabbee, Police Officer</u>
   BIA, OJS-Crow Agency

Mr. Tabbee was a BIA OJS Crow Agency law enforcement officer who arrived at the scene of the crash. He has information concerning what he observed and what, if any, actions he undertook.

6. <u>Luther Yellowrobe, Telecommunication Equipment Operator</u>
   BIA, OJS-Crow Agency

Mr. Yellowrobe was a dispatcher for the BIA OJS Crow Agency at the time of the pursuit. He has information about what information he received, sent, or overheard as a dispatcher.

7. <u>Jose Figueroa, Special Agent</u>
   BIA, OJS-Crow Agency

Mr. Figueroa was a BIA OJS Crow Agency Special Agent at the time of the pursuit and accident. He responded to the scene of the crash. He has information concerning what he observed and what, if any, actions he undertook. He may have information regarding conversations with the deceased's family.

**Non-BIA Employee Witnesses**

8. <u>Officer Pamela S. Klier, Crow Nation Tribal Police Department (Dissolved)</u>
   Contact info unknown

Ms. Klier was the Crow Nation Tribal law enforcement officer involved in the pursuit of Braven Glenn and will have information concerning what she observed and what actions she undertook. She also has information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

9. <u>Larry Tobacco, Chief of Police at time of the accident, Crow Nation Tribal Police Department (Dissolved)</u>
Hardin, Montana

Mr. Tobacco may have information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

10. <u>Frank White Clay, Current Chairman, Crow Tribe of Indians</u>
Hardin, MT

Mr. White Clay may have information concerning whether a 638 Contract was in place and what funding was used for the police force.  He has information concerning the tribe's withdrawal of its 638 Contract proposal.

11. <u>Pernell Brown, Police Officer, Crow Nation Tribal Police Department (Dissolved)</u>
Hardin, MT

Officer Brown arrived at the scene of the crash and will have information concerning what he observed and what, if any, actions he undertook.  He may have information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

12. <u>Bazil Lazure, Police Officer, Crow Nation Tribal Police Department (Dissolved)</u>
Contact Information Unknown

Officer Lazure arrived at the scene of the crash and will have information concerning what he observed and what, if any, actions he undertook.  He may also have information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

13. <u>Keven Howe, Investigator, Crown Nation Tribal Police Department (Dissolved)</u>
Wyola, MT

Investigator Howe arrived at the scene of the crash and may have information concerning the Crow Tribe investigation of the pursuit.  He

9

may also have information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

14. <u>Geoffrey Eastman, Sergeant, Crow Tribal Police Department (Dissolved)</u>
    Hardin, MT

    Sergeant Eastman may have information concerning Crow Tribal police department operations. He also has information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

15. <u>Vernon Hill, Public Safety Director, Crow Nation Tribal Police Department (Dissolved)</u>
    Crow Agency, MT

16. <u>Alvin Not Afraid, Former Chairman, Crow Tribe of Indians</u>
    Contact Information Unknown

    Mr. Not Afraid was Chairman at time of pursuit and, upon information and belief, he created the Crow Tribe Police Department. He has information concerning whether 638 Contract was in place and what funding was used for the police force. He also has information concerning the lack of supervisory authority by BIA OJS over Crow Tribal police officers.

17. <u>Charles Addington, Former Director</u>
    BIA OJS

    Mr. Addington may have information concerning any communications he had with the Crow Nation concerning the Nation's creation and operation of its own law enforcement program, including dispatch services.

18. <u>Kyle Porter, Train Conductor</u>
    Contact Information Unknown

19. <u>Emmitt Tray Old Bull III</u>
    Contact Information Unknown

10

      Mr. Old Bull III was with Braven Glenn prior to the pursuit and may have information related to Glenn's activities or state of mind.

    20.   <u>Various officers from Big Horn County and Montana Highway Patrol</u>

    21.   <u>Medical Examiner</u>

**K.   The substance of any insurance agreement that may cover any resulting judgment.**

The United States does not have insurance that would cover an adverse judgment.

**L.   The status of any settlement discussions and the prospects for compromise of the case.**

The parties have not engaged in any settlement discussions. The prospects for settlement of the case are unknown until the parties have engaged in discovery.

**M.   Suitability of special procedures.**

The United States asserts that this case is not suitable for special procedures.

**N.   Any issues relating to the disclosure or discovery of electronically stored information, including:**

**1. Issues pertaining to the preservation of such information:**

None identified at this time.

**2. Issues relating to the form or forms in which such information should be produced:**

None identified at this time. The United States anticipates producing the majority of records in Portable Document Format (PDF) and producing any related

11

video or audio files in their native format.

DATED this 26th day of January, 2023.

                                          JESSE A. LASLOVICH
                                          United States Attorney

                                          /s/ John M. Newman
                                          Assistant U.S. Attorney
                                          Attorney for United States