IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BLOSSOM OLD BULL, Personal Representative of the Estate of Braven Glenn, | CV 22-109-BLG-KLD |
| Plaintiff, | ORDER |
| vs. | |
| UNITED STATES OF AMERICA, and Does 1-9, | |
| Defendant. | |

Plaintiff Blossom Old Bull, in her capacity as the personal representative of the estate of her son, Braven Glenn, brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, against Defendant United States of America to recover damages arising out of her son's death in a vehicle crash on the Crow Indian Reservation in Montana. Old Bull moves for summary judgment on liability (Doc. 30), and the United States cross-moves for summary judgment on all claims in the Second Amended Complaint (Doc. 34). For the reasons set forth below, Old Bull's motion for summary judgment is denied, United States' cross-motion is granted, and this matter is dismissed.

I.     **Background**[1]

---

1 Old Bull has not filed a Statement of Disputed Facts in opposition to the United

On the evening of November 24, 2020, 17 year-old Braven Glenn passed Crow Tribal Police Officer Pamela Klier on Highway 451 on the Crow Indian Reservation. (Doc. 38-1 at 2-3). Officer Klier initiated pursuit, and within minutes Glenn's vehicle left the roadway, travelled onto nearby railroad tracks, and crashed into a moving train. (Doc. 37 at ¶ 16; Doc. 38-1 at 3; Doc. 38-2 at 4). Glenn was ejected from his vehicle and died at the scene. (Doc. 38-2 at 2).

United States Bureau of Indian Affairs (BIA) radio logs reflect that BIA public dispatcher Luther Yellowrobe heard Officer Klier report the pursuit on Crow Tribal Police radio at 5:39 p.m., and then heard her report that Glenn's car had been struck by a train and was on fire at 5:40 p.m. (Doc. 37 at ¶ 16; Doc. 38-1 at 3). BIA Officers on duty at the time were advised of the accident responded to the scene. (Doc. 37 at ¶ 17; Doc. 3-1 at 2-3). BIA Officer Athalia Rock Above-Morrison was the first to arrive at 6:09 p.m., followed by BIA Officer B. Tabbee and Special Agent Jose Figueroa. (Doc. 37 at ¶ 17).

On March 23, 2022, Old Bull filed an administrative claim with the BIA pursuant to the FTCA, alleging violations of the Fourth and Fourteenth

---

States' motion for summary judgment as required by Local Rule 56.1(b). The Local Rules provide that "[f]ailure to file a Statement of Disputed Facts will be deemed an admission that no material facts are in dispute." D. Mont. L.R. Civ. 56.1(d). For purposes of this background section and the discussion that follows this Court will therefore treat Old Bull's failure to file a Statement of Disputed Facts as an admission that the facts set forth in the United States' Statement of Undisputed Facts (Doc. 37) are undisputed.

Amendments to the United States Constitution "by a federal officer stemming from the wrongful death of Braven Glenn on November 24, 2020." (Doc. 37-1 at 1).

Old Bull's administrative claim was denied, and she filed this action against the United States and several Doe defendants on October 3, 2022. (Doc. 1). Old Bull has amended her complaint twice since then, the second time to add Officer Klier as a defendant. (Docs. 9, 17). The Second Amended Complaint ("Complaint") includes claims for individual and municipal liability under 42 U.S.C. § 1983 (Counts 1 and 2), violations of the Montana Constitution (Count 3), and negligence (Count 4). (Doc. 17).

In March 2023, Officer Klier moved to dismiss the claims against her for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on tribal sovereign immunity. (Doc. 20). Because the Complaint alleged that Officer Klier was at all times acting within the course and scope of her employment as tribal police officer, and it appeared she was sued only in her individual capacity, the Court concluded that Officer Klier was entitled to tribal sovereign immunity. (Doc. 27 at 3-4). The Court dismissed Officer Klier from the case, leaving the United States as the sole defendant.

Although the Complaint includes federal constitutional claims under § 1983 and claims for violations of the Montana constitution, the United States has not waived its sovereign immunity as to those claims. *See e.g. Federal Deposit Ins.*

*Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994) (the United States has not waived its sovereign immunity for claims alleging constitutional violations under § 1983); *Paulson v. City of San Diego*, 475 F.3d 1047, 1048 (9th Cir. 2007) and *Chiang v. Gonzales*, 2005 WL 8168158 at * 13 (C.D. Cal. Dec. 7, 2005) (the United has not waived its sovereign immunity against state constitutional claims). Thus, the only claim that Old Bull asserts against the United States, and the only claim that is the subject of the parties' cross motions for summary judgment, is her claim for negligence under the FTCA.

## II.   <u>Summary Judgment Standard</u>

Under Rule 56(c), a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

"The mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The non-moving party may not rest upon the mere allegations or denials of the pleadings. *Anderson*, 477 U.S. at 248. Further, inadmissible hearsay is insufficient to raise a genuine issue of material fact. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249–50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007). When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## III.   <u>Discussion</u>

Old Bull moves for summary judgment on liability, asking the Court to rule in her favor as a matter of law that the BIA "failed to intervene to prevent an unauthorized police force from carrying out a policing function on the Crow

5

Reservation and this failure caused the death of Braven Glenn." (Doc. 30).

Old Bull argues that at all times relevant to this lawsuit, the BIA was responsible

for law enforcement on the Crow Indian Reservation, but allowed a "rogue police

force" established by the tribe to begin policing on the reservation without

authority from the United States. Old Bull contends that the BIA had a fiduciary

duty to intervene to prevent the tribe's unauthorized police force from operating on

the reservation and breached that duty by failing to control the police force's

operations. Had the BIA intervened to prevent the unauthorized police force from

operating, Old Bull maintains, Officer Klier would not have been able to initiate

the high-speed chase that resulted in Glenn's death. (Doc. 31 at 2-3, 13).

The United States cross-moves for summary judgment, arguing that Old Bull

(1) has impermissibly raised this theory for the first time on summary judgment;

(2) cannot articulate a state law duty applicable to the United States under the

FTCA; (3) cannot demonstrate that the United States had an obligation to act in

light of inherent tribal authority; and (4) has not presented sufficient evidence to

raise a genuine issue of fact as to whether BIA officers engaged in the conduct

alleged in the Complaint. (Docs. 34, 35 at 2-3).

## A.    Failure to Exhaust or Adequately Plead

The FTCA "waives the United States' sovereign immunity for tort actions

and vests the federal district courts with exclusive jurisdiction over suits arising

6

from the negligence of government employees." *D.L. by through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017). Before filing an FTCA suit in federal court, however, a plaintiff must first present an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a).

The Ninth Circuit has "consistently interpreted the notice required under section 2675(a) as minimal." *Shipek v. U.S.*, 752 F.2d 1352, 1354 (9th Cir. 1985). The exhaustion requirement is satisfied "when the agency is given sufficient written notice to commence investigation, and the claimant places a value on the claim." *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982). A "skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages" is sufficient. *Avery,* 680 F.2d at 610. *See also Warren v. United States Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (explaining that to satisfy the FTCA's presentment requirement, a plaintiff need only provide the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim").

The FTCA's exhaustion requirement is jurisdictional and cannot be waived. *D.L. by and through Junio,* 858 F.3d at 1244. The plaintiff bears the burden of establishing subject matter jurisdiction under the FTCA, including by demonstrating that the claim was properly presented to the appropriate federal

agency. *See Indus. Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990 ("The party asserting jurisdiction has the burden of proving all jurisdictional facts.").

The United States argues that Old Bull has not met the FTCA's exhaustion requirement because she did not present her current theory of liability—that the BIA breached a fiduciary duty to tribal members by failing to intervene to prevent the tribe's alleged unauthorized police force from operating—in her administrative claim to the agency.

The administrative claim Old Bull submitted to the BIA outlined the alleged facts of the accident and asserted that law enforcement officers on the scene failed to provide Glenn with medical attention; prevented people from approaching him as he screamed and cried out for help after the crash; and called dispatch for an ambulance but then cancelled the ambulance. (Doc. 37-1 at 7). Old Bull explained the basis of her administrative claim as follows:

> Braven Glenn's vehicle crashed into a train and he endured pain and suffering prior to his wrongful death. Braven Glenn's death was caused by a "state-created danger" when BIA law enforcement pursued him and then failed to provide medical attention to him after the crash. Moreover, BIA law enforcement prevented other people from providing medical attention to Braven after the crash.

(Doc. 37 at ¶ 1; Doc. 37-1 at 8). Because the administrative claim does not refer to her current theory of liability, the BIA argues Old Bull has not met her burden of establishing she exhausted her administrative remedies as required for the Court to

have subject matter jurisdiction.

Contrary to the United States' argument, however, the FTCA does not require a claimant to raise all theories of liability in an administrative claim. *Shipek,* 752 F.2d at 1355-56. *See also Broudy v. U.S.,* 722 F.2d 566, 568-69 (9th Cir. 1983) ("We see nothing in section 2675(a) or the regulations which require the claimant to state with great specificity the legal theories to be asserted in the eventual FTCA action."); *Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980) ("The Government would have us also require a claimant to state his legal theory for recovery. This we cannot do.").

Although it is a close call, the Court finds that Old Bull's administrative claim meets the minimal notice requirements of the FTCA. Notwithstanding the fact that Old Bull is now advancing a different theory of liability, her negligence claim arises from the same basic set of facts. Her administrative claim provided the BIA with notice of the accident and injury as required for the agency to begin its own investigation. Because Old Bull provided the BIA with the minimal notice required for it to begin an investigation, she has exhausted her administrative remedies as required for this Court to have subject matter jurisdiction over her FTCA claim.

The United States next argues that even if the Court has subject matter jurisdiction under the FTCA, it is entitled to summary judgment because Old Bull

9

has not pled her current theory of liability. The United States relies on the principle that a plaintiff may not effectively amend the pleadings by raising a new legal theory on a motion for summary judgment. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). "Because 'summary judgment is not a procedural second chance to flesh out inadequate pleadings,' courts will not grant or deny summary judgment based on unpled theories or claims." *Esebag v. Whaley*, 2020 WL 7414734, at *7 (C.D. Cal. Sept. 8, 2020) (quoting *Wasco Prods. Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)).

Consistent with this principle, courts may decline to consider legal theories raised for the first time on summary judgment on the ground that doing so would prejudice the defendant. *See e.g. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (holding that the plaintiff could not proceed with a new theory on summary judgment that was not pled in the complaint or raised in discovery); *Smith v. Tenant Tracker, Inc.*, 2023 WL 2957404, at *15 (W.D. Wash. Feb. 3, 2023) (declining to consider a legal theory raised on summary judgment because the plaintiff never pled the theory or supportive factual allegations).

As set forth in the Complaint, Old Bull's negligence claim alleges that the United States and the Doe defendants, presumably including the BIA officers who responded to the accident scene, "were subject to a duty of care under state law in

the exercise of the police function to protect Braven Glenn's constitutional, statutory, and common law rights." (Doc. 17 at ¶ 60). Old Bull asserts that the Defendants' conduct did "not comply with the standard of care, and included negligent pursuit; negligent failure to intervene; negligent training, supervision and discipline of law enforcement officers; negligent enactment, enforcement, and violation of law enforcement policies and procedures; negligent violation of Braven Glenn's constitutional, statutory, and common law rights; and negligent performance of official duties." (Doc. 17 at ¶ 60). Old Bull also claims that the Doe defendants, "including agents of the United States, negligently failed to provide necessary and timely medical aid to Braven Glenn." (Doc. 17 at ¶ 61).

Although Old Bull alleges negligent failure to intervene as a general theory of liability, her Complaint says nothing about the alleged fiduciary duty and trust responsibilities that she now asserts as the basis for her negligence claim. The Complaint does not allege any facts to support her theory that the BIA breached its fiduciary and trust obligations by failing to control the tribe's police force or prevent it from operating on the reservation, and there is no indication that Old Bull raised this theory during discovery. But even assuming the pleadings are adequate, Old Bull's negligence claim fails on merits for the reasons outlined below.

    **B.**    **BIA Duty**

As explained above, Old Bull's negligence claim is premised on the theory the BIA had a fiduciary duty to provide law enforcement services to tribal members on the Crow Indian Reservation, which included a duty to intervene to prevent an alleged unauthorized tribal police force from operating on the reservation.

To establish this duty, Old Bull relies on the Indian Law Enforcement Reform Act ("ILERA"), which provides that "[t]he Secretary [of the Interior], acting through the Bureau [of Indian Affairs], shall be responsible for providing, or for assisting in the provision of, law enforcement services in Indian country as provided in this chapter." 25 U.S.C § 2802(a). The ILERA established the Office of Justice Services within the BIA ("BIA-OJS") and charged it with "carrying out the law enforcement functions of the Secretary in Indian country." 25 U.S.C. § 2802(b). The BIA-OJS has several law enforcement responsibilities, including but not limited to "(1) the enforcement of Federal law and, with the consent of the Indian tribe, tribal law; (2) in cooperation with appropriate Federal and tribal law enforcement agencies, the investigation of offenses against criminal laws of the United States; [and] (3) the protection of life and property." 25 U.S.C. § 2802(c)(1)-(3). Old Bull also cites the Tribal Law and Order Act ("TLOA"), which reaffirms the congressional commitment to provide law enforcement services on Indian lands and provides that "the United States has distinct legal, treaty, and trust

obligations to provide for the public safety of Indian country ….." Publ. L. No. 111-211, § 202(a)(1), 124 Stat. 2258 (2010).

Old Bull points next to the Indian Self Determination and Education Assistance Act ("ISDEAA"), Public Law 93-638, which authorizes the United States "upon the request of any Indian tribe, to enter into a contract or contracts with any tribal organization of any such Indian tribe to plan, conduct, and administer programs," including law enforcement, on Indian reservations. Under the ISDEAA, "tribes can enter into contracts—commonly referred to by their original public law number as '638 contracts'—with the United States to run programs previously administered directly by the government," including BIA law enforcement responsibilities. *Oglala Sioux Tribe v. United States*, 674 F.Supp.3d 635, 679 (D.S.D. May 23, 2023), citing 25 U.S.C. § 5321(a)(1)(E) (authorizing self-determination contracts to administer programs "for the benefit of Indians because of their status as Indians") and 25 U.S.C. § 2802(d)(4)(i) (permitting tribes to take over BIA law enforcement responsibilities through 638 contracts).

Turning to the facts of this case, Old Bull outlines the relationship between the BIA and tribal law enforcement on the Crow Indian Reservation during the relevant period. (Doc. 31 at 7-10). In June 2015, a Memorandum of Agreement ("MOA") between the Crow Indian Tribe ("the Tribe") and the BIA-OJS concerning law enforcement services for the Crow Indian Reservation expired.

(Docs. 36 at ¶ 1; 37 at ¶ 2). In February 2018, the BIA-OJS sent a letter sent a letter to the Crow tribal chairman reminding the tribe that the MOA for law enforcement had expired and expressing concern about the Tribe having announced the hiring of a Tribal Chief of Police. (Docs. 36 at ¶ 2; 32-2). The letter advised that "[t]he BIA-OJS currently administers the law enforcement functions for the Crow Indian Reservation and will continue to do so until such times as the Crow Tribe affirmatively elects to administer these program functions in accordance with" the ISDEAA. (Doc. 36 at ¶ 2). In a March 22, 2018, follow-up letter, the BIA-OJS again expressed concern about the Tribe having hired Terrill Bracken as Tribal Chief of Police and the ongoing need to renew the expired MOA. (Docs. 36 at ¶ 3; 32-4). The letter reiterated that, without a 638 contract in place, the "BIA-OJS is currently responsible for and administers the law enforcement direct service functions for the Crow Indian Reservation and will continue to do so until such time as the Crow Tribe affirmatively elects and/or chooses to administer these program functions" in accordance with the ISDEAA. (Docs. 36 at ¶ 3; 32-4).

By letter dated September 26, 2018, the Tribe notified the BIA that it intended to enter into another 638 contract and would submit a formal proposal. (Docs. 37 at ¶ 5; 32-3). The Tribe submitted its contract proposal in January 2020. (Docs. 36 at ¶ 7; 32-7). The BIA-OJS informed the Tribe that it had identified

several deficiencies in the contract proposal, and the Tribe responded on March 13, 2020, attempting to address the BIA-OJS's concerns. (Docs. 36 at ¶ 10; 32-9; 32-10). On March 31, 2020, and again on April 16, 2020, the BIA advised the Tribe that its proposal was still deficient and there were several issues that could result in a final decision to decline the contract proposal. (Docs. 36 at ¶ 11; 32-11).

On May 28, 2020, the Crow Tribal Chairman informed the BIA that the Tribe anticipated assuming full control of law enforcement operations on the reservation by July 1, 2020, and stated that "law enforcement services will cease to be performed by BIA-OJS Uniform, Patrol and Chief of Police" by that date. (Docs. 37 at ¶ 8; 32-13 at 1). The Crow Tribal Chairman issued a press release on June 26, 2020, indicating that the Tribe had terminated its agreement with the BIA and stating that the tribal police department would "be in full operation to provide police protection services for the Crow Indian Reservation" the next day. (Doc. 37 at ¶ 9; 32-1).

The BIA-OJS formally rejected the Tribe's contract proposal on August 27, 2020. (Docs. 36 at ¶ 13; 32-14). Less than a week later, the Tribe resubmitted its proposal, which included an implementation plan, departmental position descriptions, and a policy and procedure manual. (Docs. 37 at ¶ 13; 37-2). As of November 10, 2020, the BIA was awaiting supplemental information to complete its review of the Tribe's new proposal and provide a final decision. (Doc. 37 at ¶

14).

The accident that is the subject of this litigation occurred two weeks later, on November 24, 2020. Because it is undisputed that there was no 638 contract in place at that time, Old Bull argues the BIA had a statutorily imposed fiduciary duty to provide law enforcement services on the Crow Reservation, and a corresponding duty to intervene to prevent the Tribe's "rogue vigilante" police force from operating on the reservation. (Doc. 31 at 10-11).

The United States counters that because Old Bull relies on federal law to establish this duty, and the duty in an FTCA case must instead arise under state law, Old Bull cannot establish the duty element of her negligence claim. The Court agrees.

The FTCA provides that the United States may be held liable for "personal injury or death caused by the negligent or wrongful act or omission of any [government employee] while acting within the scope of his [] employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Section 2674 of the FTCA similarly provides that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The FTCA's private person analogue requires courts to "look to the state-

law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" *United States v. Olson,* 546 U.S. 43, 46 (2005) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). In other words, "the United States' liability under the FTCA is to be based on state law liability of a private party, not of a state or municipal entity." *Tekle v. U.S.*, 511 F.3d 839, 851 (9th Cir. 2007) (citing *Olson*, 546 U.S. at 44-47). *Olson* made clear that the FTCA means what it says, "namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort." *Olson*, 546 U.S. at 44. *See also Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010) (citing *Olson* as the basis for analyzing FTCA claims against federal immigration officers under principles of respondeat superior liability that apply to private entities, and declining to consider potential liability based on "the unique authority vested in police officers").

Liability arising under federal law "cannot sustain a cause of action under the FTCA." *Delta Savings Bank v. U.S.*, 265 F.3d 1017, 1024 (9th Cir. 2001). "The breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Love v. U.S.*, 60 F.3d 642, 644 (9th Cir. 1995). Thus, any duty owed by the United States in an FTCA case must arise under state law rather than federal law. *See e.g. Lutz v. U.S.,* 685 F.2d 1178, 1184 (9th Cir. 1982) (stating that any

duty the United States owed to the plaintiff would have to arise under Montana law
and could not be based on a federal regulation); *Martinez-Pineda v. United States*,
2022 WL 17844680, at *2 (9th Cir. Dec. 22, 2022) (unpublished) (explaining that
"violations of federal law cannot generate a claim under the FTCA in the absence
of a state-law duty," but federal statutes or regulations may provide the standard of
reasonable care once a state-law duty is found to exist); *Kiser v. Jackson*, 2024 WL
739795, at *5 (D. Mont. Feb. 23, 2024) (recognizing that in an FTCA case, "a legal
duty must arise under state law" and cannot rest solely on the existence of a federal
regulation or policy; federal statutes or regulations only become relevant when a
state law duty is found to exist); *Brooks v. U.S.*, 2009 WL 498323, at *5 (E.D. Cal.
Feb. 26, 2009) (rejecting the plaintiff's attempt to hold the United States liable
under the FTCA "for breach of a duty arising under federal law, not [s]tate law")

Because the conduct alleged here occurred in Montana, liability may be
imposed under the FTCA only if a private person in like circumstances would be
liable under Montana negligence law. The United States rightly points out that Old
Bull relies exclusively on federal law, including the ILERA and ISDEAA, to
establish that the BIA had a duty to intervene in the operations of the Tribe's police
force. As explained above, however, federal law cannot provide the basis for
FTCA liability. The United States argues there is no analogous private person
liability under Montana law for the BIA's alleged failure to intervene in the

operations of a governmental entity like the Tribe's police department.

In response, Old Bull contends a private person analog for the BIA's failure to intervene can be found in the special relationship exception to Montana's public duty doctrine. Under the public duty doctrine, "a general duty to protect does not give rise to liability for a particular individual's injury absent a greater duty imposed by a special relationship." *Phillips v. City of Billings*, 758 P.2d 772, 775 (Mont. 1988). A special relationship can be established in four situations:

> (1) where a statute intended to protect a specific class of persons from a particular type of harm imposes a duty; (2) where the government agent undertakes a specific action to protect a person or property; (3) where government action reasonably induces detrimental reliance by a member of the public; and (4) where the government has actual custody of the plaintiff or of a third person who harms the plaintiff.

*Gonzales v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009) (citing *Nelson v. Driscoll*, 983 P.2d 972, 978 (Mont. 1999). Old Bull argues a special relationship exists here because "the BIA affirmatively asserted that it was providing law enforcement on the Crow reservation, and specifically rejected the Crow tribe's 638 application, thus members of the tribe, like Braven Glenn and Blossom Old Bull, were reasonably induced into detrimental reliance on the BIA's promise of providing law enforcement." (Doc. 39 at 5).

The Court finds this argument unpersuasive. As the United States explains in reply, it has not argued that it is shielded from liability by the public duty doctrine. The United States asserts that the doctrine does not come into play at all because

the FTCA requires a plaintiff to identify a state law duty applicable to private persons, and the public duty doctrine applies exclusively to public entities. (Doc. 43).

Consistent with the position taken by the United States, other federal district courts have held that the public duty doctrine does not apply in FTCA cases. *See e.g. In re Marjory Stoneman Douglas High School Shooting FTCA Litigation*, 482 F.Supp.3d 1273, 1286-88 (S.D. Fla. 2020) (concluding that the public duty doctrine, which shields governmental entities from tort liability, does not apply in FTCA cases because *Olson* and other Supreme Court precedent mandate that courts "find private person analogs for government tasks for purposes of conducting the duty analysis in FTCA cases"); *Lumsden v. U.S.*, 555 F.Supp.2d 580, 594-95 (E.D.N.C. 2008) (concluding that "[t]he 'public duty' doctrine has no application to an FTCA action" because "[w]hether or not state or local law enforcement officers would be liable under state law on the same or analogous facts is irrelevant" under the FTCA); *White v. U.S.*, 2014 WL 4782855, at *25 (D. S.D. Sept. 24, 2014) (rejecting the government's argument that police officers are not liable for negligence under the public duty doctrine because "the appropriate inquiry under the FTCA is not whether state law would hold a *police officer* liable under the facts presented" but rather "whether state law would hold a *private person* liable under the facts presented"). Applying this reasoning here, the Court

agrees with the United States that Old Bull cannot rely on the special relationship exception to the public duty doctrine to establish analogous private person liability under Montana law.

Even assuming the public duty doctrine could apply, Old Bull has not shown that the BIA had a special relationship with her or Glenn that would somehow trigger a duty to intervene in the operation of the Tribe's police force. Old Bull asserts that "BIA officers have a special relationship with Native Americans they police," and members of the Tribe relied "on the BIA's promise of providing law enforcement." (Doc. 39 at 5). These allegations of a duty allegedly owed to tribal members at large would place this case squarely within the public duty doctrine.

Assuming the special relationship exception to the public duty doctrine could give rise to an analogous state law duty, to the extent Old Bull alleges in her Complaint that BIA officers acted negligently during the pursuit and at the scene of the accident, those allegations could well give rise to a special relationship and corresponding duty of care. For purposes of thoroughness, the Court will address the United States' argument that it is entitled to summary judgment on this aspect of Old Bull's negligence claim.

### D.   Accident-Related Negligence

In the Complaint, Old Bull alleges that that BIA officers were aware of the pursuit initiated by Officer Klier, as well as the lack of training and qualifications

of the tribal police, but did not intervene to stop the pursuit. (Doc. 17 at ¶ 13). She

claims BIA officers followed the pursuit and were at the crash site before Glenn

died, and initially called for an ambulance but later rescinded the request. (Doc. 17

at ¶¶ 16-18). She alleges that Glenn survived the crash and was ejected from the

vehicle, but police at the scene, include tribal and BIA officers, did not provide

Glen with any medical attention and prevented other people from doing so. (Doc.

17 at ¶ 26). She claims that Glenn screamed and cried out for help for 30 minutes

after crash, but BIA officers prevented people from approaching or helping him.

(Doc. 17 at ¶ 27).

   The United States argues it is entitled to summary judgment on this aspect of

Old Bull's negligence claim because her unsupported factual allegations are

demonstrably false. The United States cites BIA radio logs reflecting that BIA

were first made aware of the pursuit at 5:39 p.m., when public dispatcher Luther

Yellowrobe overheard Officer Klier report the pursuit on Crow Tribal Police

radio.[2] (Docs. 37 at ¶ 16; 38-1 at 3). Just one minute later, at 5:40 p.m., Yellowobe

heard Officer Klier report that Glenn's car had been struck by a train and was on

fire. (Docs. 37 at ¶ 16; 38-1 at 3). BIA officers on duty at the time were then

advised of the accident responded to the scene. (Docs. 37 at ¶ 17; 3-1 at 2-3).

Because the undisputed evidence shows that BIA dispatch first learned of the

---

2 The initial time noted in BIA dispatch logs is one hour fast.

pursuit one minute before it was over, and BIA officers on duty at the time were not notified of the accident until after it occurred, any claim that BIA officers were negligent because they failed to intervene and stop the pursuit is factually unsupportable and fails as a matter of law.

The United States argues the evidence of record similarly disproves Old Bull's allegation that BIA officers were at the scene of the accident prior to Glenn's death. As stated above, Officer Klier reported at 5:40 p.m. that Glenn's car had been struck by a train and was on fire. (Doc. 37 at ¶ 16; 38-1 at 3). BIA radio logs reflect that BIA Officer Athalia Rock Above-Morrison was the first to arrive on the scene at 6:09 p.m., followed by BIA Officer B. Tabbee at 6:14 pm., and Special Agent Jose Figueroa at 6:29 p.m. (Docs. 37 at ¶ 17; 38-1, at 2-3). This evidence is undisputed and establishes that the first BIA officer arrived on the scene approximately 28 minutes after the crash.

According to the United States, there is no evidence that Glenn survived for this amount of time. The Montana Highway Patrol's crash report noted that Glenn suffered fatal injuries, which the subsequent autopsy report identified in part as a skull base hinge-type fracture. (Docs. 37 at ¶ 19; 38-2). To address this injury, the United States disclosed Dr. Amber Wang, a forensic pathologist, as an expert witness. (Docs. 37 at ¶ 20; 37-6). Dr. Wang opined that "[g]iven the presence and severity of the head injuries described, death would have occurred immediately or

23

within a few seconds." (Docs. 37 at ¶ 21; 37-6 at 9). Dr. Wang explained that "[w]hen a fracture occurs in the base of the skull and disrupts the facial sinuses, blood can lead into the facial sinuses and is inhaled into the lungs," and concluded the absence of blood in Glenn's lungs suggested that he "did not take any significant breaths following the collision." (Docs. 37 at ¶ 22; 37-6 at 9). Based on Dr. Wang's opinion and BIA radio logs showing that the first BIA officer arrived on the scene 28 minutes after the accident, the United States argues Old Bull's allegations that BIA officers arrived on the scene before Glenn died, and failed to provide or obstructed necessary medical aid, are unsupportable and demonstrably false.

In response to the United States' summary judgment motion, Old Bull filed the declaration of Maurice Mountain Sheep, who states that he was traveling on Highway 451 on the evening of November 24, 2020, and came upon a crash scene next to the railroad tracks. (Doc. 40). Mountain Sheep states that Glenn was lying on the ground near the railroad tracks, and Mountain Sheep "heard him ask for help five or six times." (Doc. 40 at ¶¶ 5-6). Mountain Sheep states that he "tried to take a blanket down to keep him warn and see if I could help him, but the BIA police officers would not let me approach him." (Doc. 40 at ¶ 7). Mountain Sheep states that he stayed at the crash scene about 30 to 40 minutes, and then left after several more police vehicles arrived. (Doc. 40 at ¶¶ 10-11). Old Bull contends that

Mountain Sheep's declaration establishes, or at least raises a genuine issue of

material fact, that Glenn was alive and asking for help, and that BIA officers

prevented Mountain Sheep providing aid to Glenn. (Doc. 39 at 7).

The United States argues that Mountain Sheep's self-serving declaration is

insufficient to raise a genuine issue of material fact as required to withstand

summary judgment.[3] "A conclusory, self-serving affidavit, lacking detailed facts

and any supporting evidence, is insufficient to create a genuine issue of material

fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007).

The Court agrees that under the circumstances, Mountain Sheep's

conclusory self-serving declaration is inadequate to raise a genuine issue of fact for

trial, particularly in the face of Dr. Wang's unrebutted expert opinion that Glenn

would have died immediately or within seconds of the accident. (Docs. 37 at ¶ 21;

37-6 at 9). Mountain Sheep provides no factual basis for stating that the law

enforcement officers who allegedly withheld or prevented assistance to Glenn were

employed by the BIA. Whether any BIA officers were even on the scene at all

during the 30 to 40 minutes Mountain Sheep was there is not clear, since the

undisputed evidence demonstrates that the first BIA Officer did not arrive on the

---

[3] Mountain Sheep's declaration is dated March 24, 2024—just three days before
Old Bull filed her summary judgment response brief. The United States explains
that it attempted to contact Mountain Sheep in September 2023 to arrange a
deposition, and several times thereafter, all to no avail. (Doc. 43 at 10 n. 4).

scene until 28 minutes after the accident. Regardless, Mountain Sheep does not describe any facts showing that law enforcement at the scene somehow failed to render timely competent aid to Glenn. While Mountain Sheep claims unidentified law enforcement officers prohibited him from approaching Glenn, this would have been consistent with the officers' interests in controlling the scene of the accident and does not undercut Dr. Wang's expert opinion that Glenn died immediately or within seconds of the accident. Accordingly, to the extent Old Bull claims that BIA officers acted negligently during the pursuit and at the scene of the accident, the United States is entitled to summary judgment.

## IV.   **Conclusion**

For the reasons discussed above,

IT IS ORDERED that Old Bull's Motion for Summary Judgment (Doc. 30) is DENIED, the United States' Motion for Summary Judgment (Doc. 34) is GRANTED, and this matter is dismissed.

DATED this 4th day of June, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge